**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

JOSETTE NICOLE THIBEAUX,   ) No. SA CV 16-00952-AS
                     )
        Plaintiff,  ) **MEMORANDUM OPINION**
     v.             )
                     )
NANCY A. BERRYHILL,[1]    )
Acting Commissioner of Social )
Security,              )
                     )
        Defendant.  )
_____)

**PROCEEDINGS**

On May 24, 2016, Plaintiff Josette Nicole Thibeaux ("Plaintiff") filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI). (Docket Entry No 1). On November 30, 2016, Defendant filed an Answer to the Complaint and the Certified

_____

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

Administrative Record ("AR"). (Docket Entry Nos. 18-19). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 13, 15). The parties filed a Joint Stipulation ("Joint Stip.") on February 28, 2017, setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 20).

## SUMMARY OF ADMINISTRATIVE DECISION

On February 25, 2014, Plaintiff, formerly employed as an information clerk, salesperson, and hostess, (see AR 366), filed an application for DIB and SSI benefits, alleging disability beginning on May 15, 2009. (AR 255, 262). On October 1, 2013, Administrative Law Judge ("ALJ"), Joseph Lisieski III, deferred a scheduled hearing because Plaintiff was not aware that her attorney had withdrawn as her representative. (AR 96-97). On April 8, 2014, the ALJ examined the record and heard testimony from Plaintiff who was represented by counsel. (AR 32-46). The ALJ continued the second hearing in order to obtain more records from Plaintiff's treating neurologist, Dr. Michael Mahdad, M.D. (AR 43-45). On July 15, 2014, the ALJ examined the record and heard testimony from Plaintiff, vocational expert, Corinne Porter ("VE"), and medical expert, Dr. Irvin S. Belzer, M.D. (AR 47-93). On September 12, 2014, the ALJ denied Plaintiff benefits in a written decision. (AR 11-31).

The ALJ applied the five-step process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date

of May 15, 2009, and that Plaintiff's date last insured was June 30, 2011. (AR 16). At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis ("MS") with resulting loss of concentration, headaches, and poor vision in the right eye. (AR 16). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC")[2] to do less than a full range of sedentary work, including frequent lifting or carrying ten pounds; standing or walking for 2 hours and in an 8-hour workday; sitting with no limitations; occasional foot controls; frequent pushing and pulling with the bilateral upper extremity; reaching, handling, and feeling; occasional postural limitations; no climbing, balancing, ropes, ladders, scaffolds, or unprotected heights; no job that requires driving a vehicle; no activities that require depth perception; no working with objects smaller than newspaper print; no frequent moisture and wetness; occasional cold; no concentrated exposure to heat or vibrations; limited to simple tasks with simple work related decisions, object oriented; and no inherently stressful jobs such as taking complaints. (AR 18).

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

3

because (1) the objective medical record did not support Plaintiff's assertions of debilitating symptoms; (2) Plaintiff made inconsistent statements regarding her ability to work at a low-stress, sedentary job; (3) Plaintiff's condition remained unchanged when she stopped taking her MS medication while pregnant; (4) although Plaintiff was diagnosed with MS in 2000, she has had several jobs and worked after her May 2009 onset date, until August 2009; and (5) Plaintiff's daily activities indicated that she could do more than alleged. (AR 19-21).

After making a credibility finding, the ALJ addressed the opinions of Plaintiff's treating and examining physicians and the non-examining consultants. (See AR 20-23). The ALJ gave partial weight to the opinion of nonexamining, medical expert, Dr. Belzer, who testified at the hearing. (AR 22). After reviewing the medical record, Dr. Belzer testified that Plaintiff had partial blindness in the right eye; took Rebif;[3] had headaches, but records did not indicate how severe or frequent; had good exercise habits; and an October 2012 MRI of the brain showed MS and volume loss, which suggests that Plaintiff was developing dementia on an "early basis," which may have caused memory problems. (AR 54-57).

Dr. Belzer opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; had no sitting limitations; could stand or walk for 4 hours in an 8-hour workday but not on a continuous basis and would need breaks every 4 hours for 5 minutes; could frequently push and pull; could occasionally use foot controls

---

[3]     Rebif is prescribed to reduce symptoms and episodes associated with relapsing-remitting MS. https://medlineplus.gov/druginfo/meds/a604005.html.

with both feet; could occasionally use the stairs but no ladders or scaffolds; could not do activities that required the ability to assess distance with vision or see small objects; no unprotected heights, moving machinery, or motor vehicles, no frequent exposure to wetness, odors, and dust; occasional exposure to cold; infrequent exposure to heat; and occasional exposure to vibrations. (AR 58-59). The ALJ gave partial weight to Dr. Belzer's opinion and gave Plaintiff's assertions "the benefit of the doubt," finding that she had a sedentary RFC. (AR 21). The ALJ found that Dr. Belzer's opinion was based on objective medical evidence. Plaintiff had a significant vision impairment in the right eye, and an October 2012 MRI of Plaintiff's brain showed MS and volume loss, which suggested that Plaintiff may be developing dementia, but was not conclusive that Plaintiff had severe MS. (AR 22).

The ALJ rejected the opinion of examining physician, Dr. Robert A. Moore, M.D., because Dr. Moore did not have an opportunity to review additional relevant medical evidence. (AR 22). The ALJ rejected the opinions of State agency physicians, Dr. Nicolas Tsoulas, M.D., and Dr. Keith Wahl, M.D., because their opinions were not "supported by the cumulative evidence." (AR 23).

The ALJ gave no weight to the opinion of Plaintiff's treating neurologist, Dr. Mahdad. (Id.). Dr. Mahdad opined that Plaintiff could sit 6 hours and stand or walk 2 hours in an 8-hour workday; needed breaks every 30 to 45 minutes; could not handle low-stress jobs; could lift or carry less than 10 pounds occasionally and 10 pounds rarely; never climb ladders; was limited in grasping, twisting, reaching, and doing fine manipulations; should avoid

exposure to extreme heat, humidity, and hazards; and would likely be absent four days per month. (AR 422-27). Dr. Mahdad also opined that because of Plaintiff's gait disturbance, poor coordination, vision and cognitive impairments, and general weakness, Plaintiff was "not employable in any capacity." (AR 463). The ALJ gave no weight to Dr. Mahdad's opinion because (1) while Dr. Mahdad found that Plaintiff could not perform even a low-stress job, Plaintiff's July 2014 hearing testimony that she could perform a sedentary, low-stress job contradicted Dr. Mahdad's opinion; (2) the objective medical record, including Dr. Mahdad's own treatment notes, lacked support for his opinion; and (3) Dr. Mahdad's opinion that Plaintiff was not employable is a decision reserved for the Commissioner alone. (AR 23).

The ALJ rejected the opinion of Plaintiff's treating primary care physician, Dr. Kenneth Horwitz, M.D. (Id.). Dr. Horwitz opined that Plaintiff could sit for 4 hours and stand or walk less than 2 hours in an 8-hour workday; lift or carry 20 pounds occasionally and 10 pounds frequently; and was incapable of even a low-stress job. (AR 428-33). The ALJ rejected Dr. Horwitz's opinion because Plaintiff's testimony that she could perform a job that required her to sit for 8 hours in an 8-hour workday day contradicted Dr. Horwitz's assessment, and Dr. Horwitz's own examination of Plaintiff did not support "such restrictive limitations." (AR 23).

The ALJ rejected the opinion of Plaintiff's former treating physician, Dr. Thuc Tu, M.D., who opined that Plaintiff could not

work, because such a finding is reserved solely for the Commissioner. (AR 23, 410).

The ALJ rejected the statements of Harriet Thibeaux, Plaintiff's mother, because (1) her statements discussed Plaintiff's symptoms in relation to her abilities, and Ms. Thibeaux was not a medical professional; (2) Ms. Thibeaux's statements were biased because of her familial relationship with Plaintiff; and (3) the medical evidence did not support her statements. (AR 23-24).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as a policyholder information clerk. (AR 23). At step five, the ALJ found Plaintiff was able to perform jobs consistent with her age, education, and medical limitations existing in significant numbers in the national economy. The ALJ adopted VE testimony that Plaintiff could perform the jobs of addresser (Dictionary of Occupational Titles ("DOT") 209.587-010) and order clerk (DOT 209.567-014). At the hearing, the ALJ asked the VE whether her testimony conflicted with the DOT description for these jobs. (See AR 91). Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 26).

On November 11, 2014, Plaintiff requested that the Appeals Council review the ALJ's Decision, which was denied on March 25, 2016. (AR 1-10). The ALJ's Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ (1) improperly rejected the opinions of treating physicians, Dr. Mahdad, Dr. Horwitz, and Dr. Tu, in favor of the opinion of nonexamining medical expert, Dr. Belzer; (2) erred in finding that Plaintiff could perform the jobs of addresser and order clerk; and (3) did not give clear and convincing reasons to reject Plaintiff's subjective pain testimony. (MSP 4-7, 14-18, 21-25, 32-33).

**DISCUSSION**

After reviewing the record, the Court finds that the ALJ (1) gave specific and legitimate reasons to reject the opinions of treating physicians, Dr. Mahdad, Dr. Horwitz, and Dr. Tu, in favor of the opinion of nonexamining medical expert, Dr. Belzer; (2) did not err at step five in finding that Plaintiff could perform other jobs existing in significant numbers in the national economy; and (3) articulated clear and convincing reasons to find Plaintiff not credible. The Court therefore AFFIRMS the ALJ's decision.

**A.** **The ALJ Properly Rejected The Opinions Of Treating Physicians, Dr. Mahdad, Dr. Horwitz, And Dr. Tu, In Favor Of Nonexamining Medical Expert, Dr. Belzer**

Plaintiff contends that the ALJ did not provide sufficiently specific reasons to reject the opinion of Dr. Mahdad, Dr. Horwitz, and Dr. Tu, all treating physicians, in favor of the opinion of Dr. Belzer, a nonexamining medical expert. Plaintiff asserts that, had these physicians' opinions been given proper credit, Plaintiff would have been found to meet a Listing. (Joint Stip. at 4-7, 14-16). Defendant asserts that the ALJ properly rejected these physicians' opinions because (1) the objective evidence of record did not support their opinions; (2) Plaintiff made statements that contradicted Dr. Mahdad and Dr. Horwitz's opinions; and (3) to the extent that Dr. Tu and Dr. Mahdad opined that Plaintiff could no

longer work, such a determination is reserved for the Commissioner alone. (Joint Stip. at 7-13).

Social Security regulations require the Agency to "evaluate every medical opinion we receive," giving more weight to evidence from a claimant's treating physician. 20 C.F.R. § 404.1527(c). Where a treating or examining physician's opinion is contradicted by another doctor, the "[Commissioner] must determine credibility and resolve the conflict." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (quoting Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995), as amended (Apr. 9, 1996) (quoting Roberts v. Shalala, 66 F.3d at 179, 184 (9th Cir. 1995)). The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejecting the opinion of a treating physician. Lester, 81 F.3d at 831. The opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with "independent clinical findings or other evidence in the record." Thomas, 278 F.3d 947 at 957.

Dr. Belzer's opinion contradicted the opinions of Dr. Mahdad, Dr. Horwitz, and Dr. Tu. Accordingly, the ALJ was required to provide specific and legitimate reasons to reject each doctor's opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014).

## 1. Dr. Mahdad

The ALJ properly rejected Dr. Mahdad's opinion because it contradicted Plaintiff's own statements regarding her functional limitations. Magallanes v. Bowen, 881 F.2d 747, 751-52 (9th Cir. 1989) (upholding ALJ's rejection of treating physician's opinion that contradicted the claimant's own testimony); Myers v. Barnhart, 2006 WL 1663848, at *6 (C.D. Cal. 2006) ("[A] treating physician's assessment of a claimant's restrictions may be rejected to the extent it 'appear[s] to be inconsistent with the level of activity' the claimant maintains, or contradicts Plaintiff's testimony.") (internal citations omitted). Dr. Mahdad opined that Plaintiff was precluded from performing all work and could sit for 6 hours in an 8-hour workday. (AR 424-25). However, at the July 2014 hearing, Plaintiff testified that she could perform a sedentary, low-stress job where she sat for 8 hours in an 8-hour workday, which directly contradicts Dr. Mahdad's opinion. (AR 428-33).

The ALJ also rejected Dr. Mahdad opinion because it was contradicted by his own treatment notes which indicated somewhat normal findings. (See AR 375-78, 388-98). During a September 13, 2012, examination with Dr. Mahdad, Plaintiff had a normal range of motion, no facial weakness, no nystagmus,[4] no involuntary movements,

---

[4] Nystagmus is a vision condition in which the eyes make repetitive, uncontrolled movements. These movements often result in reduced vision and depth perception and can affect balance and coordination. One of the causes of Nystagmus is MS.

11

no focal motor weakness with normal sensation, and a normal stance and gait. (AR 375-77). Subsequent examinations indicated that Plaintiff had no loss of sensation; normal focal motor sensation; and normal attention, concentration, and had an intact short term memory. (AR 390-98, 411-12). During a December 27, 2012, examination Plaintiff had a mild antalgic gait and slight hyperflexion, which were her most severe physical symptoms. (AR 386).

Yet, Plaintiff asserts that the objective medical record supports Dr. Mahdad's opinion because clinical findings showed that Plaintiff suffers from exacerbations, ataxia, forgetfulness, blurred vision, and gait issues. (Joint Stip. at 5). Such generalized symptoms do not correlate to the restrictive lifting, sitting, walking, and mental limitations that Dr. Mahdad opined. During an August 10, 2012, examination with consultative examiner, Dr. Moore, Plaintiff had normal ambulation and motor skills, diminished vision in the right eye, a balance problem, abnormal tingling on her right palm, and no indication that Plaintiff could not sit for extended periods or control her upper extremities. (AR 379-82). An October 2012 MRI showed that Plaintiff had early signs of dementia, but there is no medical evidence that this condition limits Plaintiff from holding even a low-stress job. Rather, a February 23, 2013, psychological evaluation of Plaintiff performed by clinical

---

http://www.aoa.org/patients-and-public/eye-and-vision-problems/glossary-of-eye-and-vision-conditions/nystagmus?sso=y.

psychologist, Dr. H. McGee, Ph.D., showed that Plaintiff had "mild cognitive limitations in her ability to work, displaying mild deficits in processing, speed," attention, and concentration, but Plaintiff was capable of learning a routine, repetitive skill; reasoning capacities were adequate; and was "able to deal with regular stress in competitive work." (AR 408). Dr. Belzer held the same opinion, (AR 64-68), and the ALJ adopted Dr. Belzer's reasoning, which was proper given the clinical findings. Magallanes, 881 F.2d at 747 (an ALJ properly rejects a treating physician's opinion where the ALJ relies on contrary lab results, examinations findings, and other physicians' opinions).

Moreover, the ALJ made multiple attempts to develop the record. The ALJ continued the second, April 2014, hearing in order to obtain additional medical evidence from Dr. Mahdad. (See AR 44-45). While some new records were submitted, there was still scant evidence to support Dr. Mahdad's opinion, and when the ALJ offered to schedule another consultative examination, Plaintiff's attorney rejected the proposition. (See AR 21, 69-70).

Lastly, the ALJ appropriately found that Dr. Mahdad's speculation that Plaintiff was "unemployable" carried no probative weight. (AR 23, 463). Whether a claimant can work competitively is an issue reserved specifically to the Commissioner, and a physician's opinion on this issue is not entitled to special significance. 20 C.F.R. § 404.1527(d)(1); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (July 2, 1996) (medical source opinion

13

about whether a claimant is unable to work is not entitled to controlling weight or given special significance); <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted). Non-medical opinions that a plaintiff is disabled or unable to work are not binding on the Commissioner. <u>See</u> <u>Boardman v. Astrue</u>, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance.").

Accordingly, Plaintiff's own statements regarding her physical limitations which contradicted Dr. Mahdad's opinion, the fact that Dr. Mahdad's own treatment notes failed to support his opinion, and the medical record as a whole which showed mild abnormalities, were all specific and legitimate reasons to reject Dr. Mahdad's opinion.

### 2. Dr. Horwitz

The ALJ properly rejected Dr. Horwitz's opinion because it was also contradicted by Plaintiff's own statements. As stated above, an ALJ may reject the opinion of a treating physician where the Plaintiff's statements directly contradict the treating physician's assessment. <u>Magallanes</u>, 881 F.2d at 747 (upholding ALJ's rejection of treating physician's opinion that contradicted the claimant's own

testimony); Here, Dr. Horwitz opined that Plaintiff could only sit for 4 hours in an 8-hour workday and that Plaintiff was incapable of working a low-stress job.  However, Plaintiff testified that she could do a low-stress job where she sat for 8 hours in an 8-hour workday.  (AR 428-33).  Accordingly, Plaintiff's own statements regarding her physical limitations contradicted Dr. Horwitz's opinion, which is a legitimate and specific reason to reject his opinion.

The ALJ also rejected Dr. Horwitz's opinion because it was not supported by his own examination findings and the objective medical record.  <u>Magallanes</u>, 881 F.2d at 747.  Although Dr. Horwitz opined that Plaintiff cannot lift more than 20 pounds occasionally and 10 pounds frequently, can sit for 4 hours in an 8-hour workday, or stand for 2 hours in an 8-hour workday, Dr. Horwitz's examination findings were minimal.  A March 2014 examination of Plaintiff showed normal musculoskeletal system results, normal reflexes, and normal neurological findings, with the exception of loss of sensation in the right thigh and "mild" lack of coordination on the left side. Plaintiff's chief complaint for the visit was headaches.  (AR 436-37).  Plaintiff attended a follow-up visit with Dr. Horwitz, but treatment notes only list Plaintiff's medications.  (AR 478-79). The record does not otherwise contain treatment notes from Dr. Horwitz.  Thus, the severe limitations that Dr. Horwitz' found were not supported by the medical record and the mild irregularities that were documented.  Accordingly, the ALJ gave specific and legitimate reasons to reject the opinion of Dr. Horwitz.

**3.  Dr. Tu**

The ALJ appropriately found Dr. Tu's opinion that Plaintiff cannot work carried no probative weight.  (AR 23, 410, 413, 416-20). Whether a claimant can work is an issue reserved specifically for the Commissioner, and a physician's opinion on this issue is not entitled to special significance.  20 C.F.R. § 404.1527(d)(1); Ukolov, 420 F.3d at 1004; Boardman, 286 Fed. Appx. at 399. Accordingly, the ALJ gave a specific and legitimate reason to reject Dr. Tu's opinion where Dr. Tu opined only that Plaintiff could not work.

**B.  The ALJ Properly Found That Plaintiff Could Perform The Job Of Addresser**

Plaintiff contends that the ALJ erred in finding that she could perform the occupations of addresser (DOT 209.587-010) and order clerk (DOT 209.567-014), because Plaintiff's RFC conflicts with the the required level of reasoning for both jobs as described in the DOT. (Joint Stip. at 16-18, 21).  Plaintiff's RFC limits her to performing "simple tasks with simple work related decisions," (AR 18), which precludes her from performing jobs that require level 2 or 3 reasoning skills.  (Joint Stip. at 17-18).  Because the DOT description for addresser and order clerk require level 2 and 3 reasoning skills respectively, Plaintiff could not perform these jobs.  (Id.).  Plaintiff asserts that because the ALJ did not recognize and then reconcile the conflict between these jobs and Plaintiff's RFC, the ALJ committed reversible error.  (Id.).

In considering potential occupations that a claimant could perform, the ALJ relies on the DOT and VE testimony. 20 C.F.R. § 416.966(e); Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015); Valentine, 574 F.3d at 689. "When there is an apparent conflict between the [VE's] testimony and the DOT — for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear to be more than the claimant can handle — the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing Massachi v. Astrue, 486 F.3d 1149, 1153-54 (9th Cir. 2007). An ALJ's failure to inquire into an apparent conflict is harmless where there is no actual conflict between the RFC and the DOT. Ranstrom v. Colvin, 622 F. App'x 687, 689 (9th Cir. 2015) (citing Massachi, 486 F.3d at 1154 n. 19).

Here, the VE testified that Plaintiff could perform the occupations of addresser (DOT 209.587-010) and order clerk (DOT 209.567-014), and the ALJ asked whether the VE's testimony conflicted with the DOT. (AR 89-90). The VE responded that her testimony did not conflict with the DOT. (AR 90). The ALJ adopted the VE's testimony. (See AR 25). The DOT description for addresser requires Level 2[5] Reasoning and the DOT description for order clerk requires Level 3[6] Reasoning. See ADDRESSER, DOT 209.587-010; ORDER

---

[5] The DOT defines Level 2 Reasoning as "[a]pply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." ADDRESSER, DICOT 209.587-010.

[6] The DOT defines Level 3 Reasoning as "[a]pply[ing] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete

CLERK, FOOD AND BEVERAGE, DOT 209.567-014. The ALJ limited Plaintiff to "simple tasks with simple work related decisions, object oriented and no inherently stressful jobs such as taking complaints." (AR 18).

Plaintiff relies on Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) to assert that a person who is limited to performing "simple tasks" cannot perform jobs, such as addresser, which require Level 2 reasoning. (Joint Stip. at 17). However, the holding in Rounds is narrower than Plaintiff represents. In Rounds, the plaintiff's RFC limited her to performing "one to two-step tasks," not "simple tasks." Compare Rounds, 807 F.3d at 1001; with (AR 18). The court concluded that "there was an apparent conflict between Round's RFC, which limited her to performing one -and two-step tasks, and the demands of Level [2] reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" Rounds, 807 F.3d at 1003 (citing DOT, App. C, § 3, 1991 WL 688702). The "obvious similarity" between Round's RFC and Level 1 reasoning, which requires a person to apply "commonsense understanding to carry out simple one – or two-step instructions," supported the court's finding that Rounds could only perform jobs that require Level 1 reasoning. Id. Here, Plaintiff is able to perform simple tasks, instead of only one and two-step tasks, which

variables in or from standardized situations." ORDER CLERK, FOOD AND BEVERAGE, DICOT 209.567-014.

distinguishes Plaintiff's mental limitations from the claimant in Rounds.

Moreover, courts have found that a person who is limited to "simple tasks" can perform jobs that require Level 2 reasoning. See, e.g., Hackett v. Barnahart, 395 F.3d 1168, 1176 (10th Cir. 2005) ("[L]evel-[2] reasoning appears more consistent with Plaintiff's [residual functional capacity]" to perform "simple and routine work"); Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) (finding that plaintiff's ability to perform "simple tasks . . . that had some element of repetitiveness to them" indicated a reasoning level of 2); Bowman v. Colvin, __ F.Supp.3d __, 2017 WL 66390, at *15 (D. Or. 2017) ("Level [2] allows for the performance of detailed but simple instructions which are not complex . . . when the RFC [limiting someone to simple tasks] is compared to the definitions of both Level [2] and Level [3] reasoning, it is clear that the RFC here aligns with Level [2] and not Level [3]."). Accordingly, because Plaintiff could perform simple tasks, the ALJ properly adopted the VE's testimony that Plaintiff could perform the job of addresser, a Level 2 reasoning occupation.

The ALJ erred in adopting the VE's testimony that Plaintiff could perform the job of order clerk, a Level 3 reasoning occupation. Zavalin, 778 F.3d at 847 (finding "an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"). The ALJ failed to resolve this conflict. (See AR 25). However, this error

was harmless because the ALJ also identified a Level 2 reasoning job — addresser — that Plaintiff could perform. <u>Stout v. Comm'r of Soc. Sec.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ errors are harmless when they are inconsequential to a non-disability finding); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for harmless error); <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of ALJ decisions regarding disability).

## C. The ALJ Articulated Clear And Convincing Reasons To Find Plaintiff Not Credible

Plaintiff asserts that the ALJ improperly found her not credible for the following reasons: (1) the medical record suggests that Plaintiff has a disabling condition because she had a visiting nurse come to her home; (2) the ALJ exhibited a gender bias in finding that Plaintiff was not credible because she did not take MS medication while pregnant; and (3) the ALJ gave too much weight to Plaintiff's daily activities when compared to other factors supporting Plaintiff's credibility. (Joint Stip. at 22-25, 32-33).

Defendant contends that the ALJ provided the following clear and convincing reasons to find Plaintiff not credible: (1) the objective record did not support Plaintiff's statements; (2) Plaintiff made inconsistent statements regarding the severity of her condition; (3) Plaintiff's daily activities demonstrated greater physical ability than she claimed; and (4) the ALJ properly considered Plaintiff's failure to take her MS medication while

pregnant because an ALJ may consider the medications a claimant takes when making a credibility determination. (Joint Stip. at 25-30).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of his subjective symptoms. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear, and convincing reasons for doing so. <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)). Because there is no evidence of malingering, the "clear and convincing reasons" standard applies.

In her disability application, Plaintiff asserted that she cannot work because she has MS that causes debilitating symptoms, including seizures, severe migraines, and blurred vision in the right eye. (AR 288). Plaintiff stated in an Updated Work Information form that she needs help showering and bathing; has no energy to clean but can cook easy meals that do not require standing; and either stays at home or walks to the park with her daughter. (AR 325). Plaintiff testified at the third, July 2014, hearing that she suffers from dizzy spells on a daily basis; forgetfulness, and a loss of appetite, which makes her weak and

causes headaches; needs help to clean and cook; on a normal day, lays and watches television; and leaves the house once every other day to go to church or the grocery store. (AR 70-72, 75-76).

The ALJ found Plaintiff not credible for the following reasons: (1) the objective medical record did not support Plaintiff's assertions of debilitating symptoms; (2) Plaintiff made inconsistent statements regarding her ability to work at a low-stress, sedentary job; (3) Plaintiff did not take her MS medication while pregnant and her condition remained unchanged; (4) although Plaintiff was diagnosed with MS in 2000, she had several jobs and worked after her May 2009 onset date, until August 2009; and (5) Plaintiff's daily activities indicated that she had greater abilities than she alleged. (AR 19-21).

First, the ALJ properly found that the medical evidence did not support Plaintiff's statements. The ALJ noted that "[c]learly, the claimant has MS," but "the record does not show severity . . . " (AR 21). Examinations with Dr. Mahdad, Dr. Moore, and Dr. Horwitz showed largely normal results regarding Plaintiff's motor strength and ability to ambulate. (AR 20). The October 2012 MRI showed "small to large areas of abnormal T2/flair hyper intensities throughout . . . " the brain, "consistent with history of MS and moderate degree of diffuse generalized volume loss, advanced for patient's age," but the MRI did not correlate to the severity of the condition, just its presence. (Id.). Ophthalmologist records indicated that Plaintiff had mild optic neuritis in the left eye and neuritis in the right eye, which left Plaintiff's right eye

significantly impaired and left eye normal, and, as Plaintiff asserts, she was seen by a visiting nurse, but "just because one has a visiting nurse, it does not mean one is disabled." (AR 20-21).

The ALJ's summary of the evidence reflects the record as a whole. A MRI of Plaintiff's brain showed MS and early signs of dementia, but a psychological evaluation concluded that Plaintiff had only mild cognitive limitations and could hold a job with regular stress that requires using a routine, repetitive skill. (See AR 388, 408). As the ALJ noted, Plaintiff has a significant visual impairment in her right eye, which affects her depth perception, but it does not preclude her from all work. (AR 64-65). Moreover, the objective medical evidence, which primarily encompassed examinations conducted by Dr. Horwitz and Dr. Mahdad, had normal findings. Nurse records show that Plaintiff intermittently complained of dizziness and headaches, but not to the constant degree that Plaintiff asserts. (See AR 470-79). The lack of objective medical evidence regarding Plaintiff's disabling physical and mental limitations supports the ALJ's finding that Plaintiff was not credible. Burch, 400 F.3d at 680-81 ("Although lack of objective medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Moreover, the mere fact that Plaintiff was seen by a visiting nurse does not constitute objective medical evidence supporting Plaintiff's allegations. Objective medical evidence includes clinical findings, physical examinations, or tests done by a medical

23

source, which establishes a condition and related symptoms supporting a finding of disability. Without such objective evidence, an ALJ may give no weight to a physician's treatment notes. See Batson v. Comm'r, 359 F.3d 1190, 1195 n. 3 (9th Cir. 2004) (treating physician notes did not provide objective medical evidence of alleged limitation); Thomas, 278 F.3d at 957 (ALJ need not accept treating physician's opinion if inadequately supported by clinical findings). Accordingly, the record is not consistent with Plaintiff's statements.

Second, the ALJ properly found Plaintiff's testimony that she could do a low-stress, sedentary job inconsistent with her allegations of disabling symptoms. Inconsistent statements regarding a Plaintiff's functional limitations provide a clear and convincing reason to find a plaintiff not credible. Smolen, 80 F.3d at 1284; See Thomas, 278 F.3d at 959 (upholding an adverse credibility finding in part due to a claimant's inconsistent statements to her doctors); see also Brown v. Astrue, 405 F. App'x 230, 233 (9th Cir. 2010). Plaintiff testified that she could do a sedentary job, "if easy and repetitive, and not stressful." (AR 21). Yet, Plaintiff also stated that on a normal day all she can do is lay and watch television because of constant, severe headaches and dizzy spells. (AR 70-72, 75-76, 325). Plaintiff's testimony contradicts her previous statements. Accordingly, the ALJ gave a clear and convincing reason to find Plaintiff's statements not credible where Plaintiff testified that she could hold a sedentary, low-stress job.

Third, the ALJ improperly found Plaintiff not credible because she did not take her MS medication, Rebif, while pregnant. (See AR 21). It is not clear whether the ALJ provided this reason because (a) Plaintiff failed to follow prescribed treatment, or (b) Plaintiff's condition remained unchanged, indicating that Plaintiff's condition was not as severe as claimed. The Court will address both interpretations.

It is improper to discount a claimant's credibility on the basis of failure to pursue medical treatment when the claimant "has a good reason for not" doing so. Carmickle v. Commissioner, Social Security Admin., 533 F.3d 1155, 1162 (9th Cir. 2008); see also SSR 96-7p, 1996 WL 374186, at *7 (ALJ must not draw inferences about claimant's symptoms and their functional effects from failure to follow prescribed treatment, without first considering any explanations provided or other information in the record that may explain that failure). Here, Dr. Mahdad was aware that Plaintiff stopped taking Rebif while pregnant and did not make any objections in his treatment notes. (See AR 375). Accordingly, Plaintiff's pregnancy was an explanation for Plaintiff to not take Rebif for a period of time.

Alternatively, the ALJ improperly substituted his judgment for that of the medical evidence in interpreting Plaintiff's physical condition while she was not taking Rebif. An ALJ cannot substitute medical evidence with his own judgment, and such speculation cannot support an inference on which an ALJ's credibility determination depends. Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)

(an ALJ who is not qualified as a medical expert cannot make "his own exploration and assessment as to [the] claimant's physical condition"); see also Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not rely on his own lay opinion regarding medical matters); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1995) (same); Miller v. Astrue, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (same); cf. Rudder v. Colvin, 2014 WL 3773565, at *12 (N.D. Ill. 2014) ("The ALJ may be correct that disabling limitations from multiple sclerosis would result in more frequent treatment or need for medication. However, the ALJ must include evidence to support such a conclusion in his opinion because he is not qualified, on his own, to make such determinations").

Here, the ALJ viewed Plaintiff's apparent stabilized condition while she was pregnant and not taking Rebif as a reason to discredit Plaintiff's MS symptoms. Yet, the medical record does not address whether Plaintiff's condition was stable during this time, or whether Plaintiff's symptoms should have been worse while not on Rebif. Because the ALJ is not a medical expert, he cannot assess the need for such medications or opine on how stable a claimant's condition should be. Accordingly, the ALJ's finding that Plaintiff was not credible because she did not take her MS medication while she was pregnant was not a clear and convincing reason to find Plaintiff not credible.

Fourth, the ALJ improperly found that Plaintiff was not credible because she had a failed work attempt after her onset date. (AR 21). A failed work attempt versus the ability to work is distinguished under 42 USC § 422(c); SSR 84-25. A plaintiff's

unsuccessful work attempt is not a clear and convincing reason to conclude that her symptoms would not preclude consistent employment. Lingenfelter, 504 F.3d at 1028 (ALJ erred in relying on period of work as proof that a claimant's pain was not disabling). Accordingly, Plaintiff's attempt to work is not a clear and convincing reason to reject Plaintiff's pain testimony.

Fifth, the ALJ properly found that Plaintiff's daily activities undermined her credibility. Burch, 400 F.3d at 680 (ALJ properly found claimant not credible where her daily activities suggested that she was quite functional). Plaintiff describes having severe fatigue, headaches, dizziness, and lack of coordination. (AR 70-74, 76). Yet, during a February 2013 consultative examination, Plaintiff reported reading; cooking; using a computer; sometimes washing dishes; sometimes cleaning; going to church, the grocery store, and the beach; and babysitting her friend's children four times per month. (AR 405). Dr. Horwitz also reported that Plaintiff had good exercise habits and did normal activities of daily living. (AR 436). Accordingly, Plaintiff's daily activities was a clear and convincing reason to find Plaintiff not credible.

In sum, the ALJ articulated clear and convincing reasons to find Plaintiff not credible: the medical evidence did not support Plaintiff's statements; Plaintiff testified that she could perform a low-stress, sedentary job; and Plaintiff's activities of daily living revealed that Plaintiff had greater abilities than she asserted. The ALJ also provided improper reasons to find Plaintiff not credible in citing Plaintiff's decision to not take Rebif while

pregnant and her failed work attempt.  However, the Court finds any such error harmless, since the ALJ provided other clear and convincing reasons to find Plaintiff not credible.  <u>Carmickle</u>, 533 F.3d at 1162.

## D.   <u>The ALJ Properly Found Lay Witness Testimony Not Credible</u>

Plaintiff asserts that the ALJ failed to properly consider Plaintiff's mother's testimony.  (<u>See</u> Joint Stip. at 24-25, 33). Defendant contends that the ALJ provided germane reasons for rejecting Plaintiff's mother's testimony.  (<u>See</u> Joint Stip. at 30-32).

The ALJ is required to give germane reasons for rejecting lay witness testimony.  <u>See</u> <u>Carmickle,</u> 533 F.3d at 1164; <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006); <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>Smolen</u>, 80 F.3d at 1288-89.

Here, the ALJ gave a germane reason for rejecting Plaintiff's mother's testimony because it was inconsistent with the objective medical evidence.  <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2015) (inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness); <u>Lewis</u>, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay witness testimony that conflicted with the available medical evidence.").

However, the ALJ erred in discrediting Plaintiff's mother's statements because she lacks medical expertise and has familial bias. "[L]ack of medical expertise and family bias are not germane reasons to reject lay witness testimony. <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1116 (9th Cir. 2009) (ALJ cannot reject law witness testimony because of lack of medical training or family bias). The ALJ's error was harmless because he provided another germane reason to reject Plaintiff's mother's testimony in finding that it was inconsistent with the medical record. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and quotation omitted) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.").

\\

\\

\\

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 10, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE